UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| LUSVINA PAZ,<br><br>  Plaintiff,<br><br>  v.<br><br>PORTFOLIO RECOVERY ASSOCIATES, LLC,<br><br>  Defendant. | No. 15 C 5073<br>Judge James B. Zagel |

**MEMORANDUM OPINION AND ORDER**

In this case, Plaintiff Lusvina Paz alleges that the Defendant Portfolio Recovery Associates (PRA) provided credit information about her to three credit reporting agencies without informing those agencies that she had disputed her debt. Paz argues that this failure to provide information violates the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 et. seq. (FDCPA).

Both Paz and PRA now file for summary judgment. For the reasons stated below, the Court denies PRA's motion and grants Paz's motion.

**BACKGROUND**

The following facts are undisputed. Plaintiff Lusvina Paz incurred a debt on a Capital One Bank credit card and went delinquent on that debt on August 26, 2010. The amount of debt listed on the account was $949.02. Paz has testified that the card was used primarily for purchasing food. Defendant Portfolio Recovery Associates purchased the debt on August 19, 2013.

PRA mailed Paz a demand letter on January 17, 2014, and Paz never made any payment to PRA following this demand letter. Paz testified that she never viewed her credit report

1

following this demand letter nor did she reach out by phone to PRA.

Lusvina Paz's daughter-in-law, Linda Paz, put Paz in touch with the Debtors Legal Clinic regarding legal representation. Lusvina does not speak English, so she brought Linda as a translator for her meeting with the Debtors Legal Clinic. In her deposition, Lusvina says she was not sure who she spoke with during this meeting, but her daughter-in-law testified that they met with an attorney named Michael Wood. Paz testified that at the time of this meeting she thought that she only owed $400 but could have been mistaken about that figure.

After the meeting with Wood, another attorney at Debtors Legal Clinic, Andrew Finko, faxed a letter to PRA. This letter stated in part that "the amount reported is not accurate." The letter was four paragraphs long and also informed PRA that Debtors Legal Clinic would be representing Paz and that Paz could not pay the debt because she was insolvent. This letter was faxed to PRA's general counsel on September 12, 2014. Paz testified that she did not remember discussing this letter with any attorney at the Debtors Legal Clinic or even talking to Andrew Finko.

After PRA received this letter, PRA communicated information regarding Paz's account to three credit reporting agencies, Experian, Equifax, and TransUnion. When providing information about Paz, PRA did not say that Paz had disputed the amount of debt.

**LEGAL STANDARD**

Summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). A genuine issue of triable fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Pugh v. City of*

2

*Attica, Ind.*, 259 F.3d 619, 625 (7th Cir. 2001) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)).

When considering the Plaintiff's Motion for Summary Judgment, the Court considers the facts in the light most favorable to the Defendant, and when considering the Defendant's Motion for Summary Judgment, the facts are considered in the light most favorable to the Plaintiff. *See First State Bank of Monticello v. Ohio Cas. Ins. Co.*, 555 F.3d 564, 567 (7th Cir. 2009) ("[B]ecause the district court had cross-motions for summary judgment before it, we construe all facts and inferences therefrom in favor of the party against whom the motion under consideration is made.") (internal quotation marks omitted).

## DISCUSSION

### I. Standing

PRA contends that Paz lacks Article III standing to sue in federal court because she cannot show that she suffered an injury. To establish Article III standing, a plaintiff must show "(1) an 'injury in fact,' that is, 'an invasion of a legally protected interest which is...concrete and particularized, and...actual or imminent'; (2) a causal connection between the injury and the challenged conduct, meaning that the injury is 'fairly traceable' to the challenged conduct; and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Dunnet Bay Const. Co. v. Borggren*, 799 F.3d 676, 688 (7th Cir. 2015) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560–61 (1992)). PRA argues that Paz has not suffered an "injury in fact," citing the recent Supreme Court decision in *Spokeo, Inc. v. Robins*, 136 S. Ct. 1540 (2016).

In *Spokeo*, the Court considered whether a violation of a statutory right granted by the Fair Credit Reporting Act (FCRA) was a sufficient injury in fact to maintain an action in federal court. *Id.* at 1544. The defendant website operator generated a consumer report that inaccurately

reported the plaintiff's marital status, age, employment status, salary, and educational history. *Id.* at 1546. The plaintiff alleged that the website operator violated the FCRA by generating this report, but the plaintiff did not allege that he suffered any monetary harm as a result of the FCRA violation. *Id.* The Supreme Court held that a violation of the FCRA alone was insufficient for Article III standing, as the plaintiff was also required to show a "concrete harm" that flowed from the statutory violation. *Id.* at 1549. The Court specifically limited its holding, noting that "the violation of a procedural right granted by statute can be sufficient in some circumstances to constitute injury in fact." *Id*. Among those circumstances are cases where a statutory violation creates the "risk of real harm." *Id*. While the Court in *Spokeo* highlighted the need for an injury to be concrete, the Court also affirmed the power of Congress to "define injuries and articulate chains of causation that will give rise to a case or controversy where none existed before." *Id.*

Here, PRA argues that Paz has not alleged an injury in fact, because she has not alleged emotional distress as a result of PRA's actions nor does she seek actual damages. Furthermore, PRA argues that the plaintiff has no standing as she has "no idea what this lawsuit is even about."

Despite not alleging emotional or monetary damages, Paz has alleged that PRA failed to provide the disclosures to third party credit reporting agencies that are required by § 1692e(8). The FDCPA requires debt collectors to communicate the existence of a dispute even if the debt collector fully expects to win the dispute. The reason for these broad protections is because an incomplete credit disclosure creates the risk of an inaccurate credit rating. This risk of financial harm is a concrete harm, even though the harm was first defined and articulated by Congress. Unlike an incorrect zip code, the "bare procedural violation" in *Spokeo*, an inaccurate credit rating creates a substantial risk of harm. *See Sayles v. Advanced Recovery Sys., Inc.*, No. 3:14-

CV-911-CWR-FKB, 2016 WL 4522822, at *2 (S.D. Miss. Aug. 26, 2016) ("Congress intended [§ 1692e(8)] of the FDCPA to address the dissemination of false information and abusive practices employed by debt collectors. Plaintiff's alleged injury is more than a bare procedural violation, it is the very type of injury Congress sought to eradicate and thus created a right of action to protect consumers."). Other courts in this District have affirmed, post-*Spokeo*, that harms identified by the FDCPA are sufficiently concrete to confer Article III standing. *See Saenz v. Buckeye Check Cashing of Illinois*, No. 16 CV 6052, 2016 WL 5080747, at *2 (N.D. Ill. Sept. 20, 2016) ("[N]othing in *Spokeo* overruled the Seventh Circuit's decisions that emphasized and affirmed the power of Congress to pass legislation creating new rights, which if violated, would confer standing under Article III."); *Quinn v. Specialized Loan Servicing, LLC*, No. 16 C 2021, 2016 WL 4264967, at *4 (N.D. Ill. Aug. 11, 2016) ("[W]hile *Spokeo* held that a procedural violation of the FRCA does not necessarily give rise to an injury in fact, it does not follow that the same holds true of violations of other statutes, including the FDCPA."); *Lane v. Bayview Loan Servicing, LLC*, No. 15 C 10446, 2016 WL 3671467, at *5 (N.D. Ill. July 11, 2016) ("[T]he prior Seventh Circuit decisions addressing the concreteness of FDCPA injuries survived *Spokeo*, which established some general principles but did not contain a holding specific enough to overrule Seventh Circuit law on the FDCPA.").

Paz alleges that PRA violated § 1692e(8) of the FDCPA, which protects against the risk of harm created by a deficient disclosure of credit information to a third party. Because this risk of harm is the sort of concrete harm required for standing, Paz has Article III standing to bring this suit.

**II.     The Elements of an FDCPA Claim**

For PRA to be liable under the FDCPA, the undisputed facts must show that (1) the

5

plaintiff is a consumer within the meaning given in the statute; (2) the debt arises out of a transaction entered primarily for personal, family, or household purposes; (3) the defendant collecting the debt is a "debt collector" under the statute; and (4) the defendant violated, by act or omission, a provision of the FDCPA. *Whittiker v. Deutsche Bank Nat. Trust Co.*, 605 F. Supp. 2d 914, 938-39 (N.D. Ohio 2009)

> The provision of the FDCPA at issue here provides the following:
>
>> [a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section. . .
>>
>> (8) Communicating or threatening to communicate to any person credit information which is known or which should be known to be false, including the failure to communicate that a disputed debt is disputed.

15 U.S.C. § 1692(e)(8)

PRA was clearly a debt collector at the time of the alleged FDCPA violation, as PRA purchased the alleged debt after default and was attempting to collect the debt from the Plaintiff. *Reed v. LVNV Funding, LLC*, No. 14 C 8371, 2015 WL 1510375, at *4 (N.D. Ill. Mar. 27, 2015) ("The FDCPA defines a 'debt collector' as 'any person ... who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.'"). The parties dispute whether Paz is a consumer, whether the debt was used for personal, family, or household purposes, and whether PRA violated § 1692(e)(8).

**A.     Purpose of the Debt**

PRA disputes whether Paz has presented sufficient evidence to support a finding that she is a consumer under the FDCPA and that the debt arose out of a transaction entered into for personal, family, or household purposes.

Plaintiff in her unrebutted testimony stated that she used the credit card at issue in this

6

case for food and things for her family. Nothing in the record contradicts this testimony. PRA argues that this evidence should be excluded as it is "self-serving," citing *Matin v. Fulton, Friedman & Gullace LLP,* 826 F. Supp. 2d 808 (E.D. Pa. 2011). In that case, the court found that an account statement that did not list specific purchases was insufficient to establish whether the debt was consumer debt, citing the plaintiff's inability to recall what purchases she made with the credit card. *Id.*

Plaintiff's testimony here goes beyond the testimony in *Matin*. Paz testified that the credit card was used for food and other household purposes, and without any evidence in the record to contradict this testimony it is considered an undisputed fact by the court. Thus because Paz used the credit card to make household purchases, she is considered a consumer under the FDCPA, and her debt arose from the type of transaction covered by the statute.

**B.     Violation of a Provision of the FDCPA**

The parties also dispute whether Paz ever actually disputed her debt such that PRA's failure to inform the credit agencies constitutes a violation of § 1692(e)(8). PRA's two arguments here, that the letter did not constitute a communication on Paz's behalf and that the language of the letter did not communicate a dispute, were recently considered by this Court in *Bowse v. Portfolio Recovery Associates, LLC*, No. 15 C 4037, 2016 WL 6476545 (N.D. Ill. Nov. 2, 2016). The facts here are slightly different than the facts in *Bowse*, but despite these differences I reach the same conclusion I did in *Bowse* and find that PRA violated the FDCPA.

**1.     The Letter's Author**

PRA argues that Paz has not presented sufficient evidence to establish that she wanted to dispute her debt. PRA argues that Paz had no intention of disputing her amount of debt and points out that Paz testified that she never reviewed her credit report, thus she could not actually

have an issue with any communication PRA made to the credit agencies. PRA also points out that Paz relied on her daughter-in-law when meeting with the Debtors Legal Clinic, and her daughter was unaware of the specifics of Paz's finances.

While the record certainly shows some confusion on Paz's part about her financial status and the legal implications of her debt, the record clearly shows that she obtained legal representation to assist her in navigating these issues. Rather than penalize the Plaintiff for not knowing what her rights were under the law prior to contacting an attorney, the law permits an attorney to advocate on Paz's behalf after a consultation. Once Debtors Legal Clinic had been retained as Paz's counsel, an attorney from that organization faxed a letter to PRA. The company argues that the contents of that letter should not be considered a communication from Paz unless Paz can show she specifically discussed each aspect of the letter.

PRA's argument mischaracterizes the Plaintiff's burden. So long as a plaintiff can show that an attorney "acted on [plaintiff's] behalf" and "made the determination to indicate that the Debt was disputed," the letter from a plaintiff's attorney constitutes a communication on a plaintiff's behalf. *Gomez v. Portfolio Recovery Associates, LLC*, No. 15 C 4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016). Nothing in the FDCPA requires further proof nor does any other principle of law cited by PRA. To require the plaintiff to bear such a burden would "run contrary to established principles of agency" and "interfere with an attorney's ability to represent a consumer client." *Rodriguez v. I.Q. Data Int'l, Inc.*, No. 15-CV-383, 2015 WL 7351925, at *2 (N.D. Ill. Nov. 4, 2015).

Thus the factual dispute about what Paz said during her meetings at Debtors Legal Clinic and who she spoke with is not relevant to the issue of whether PRA should have considered the attorney letter a communication from Paz. PRA received an attorney letter from Paz's attorney.

8

The letter was sent within the scope of that attorney's representation of Paz. The court need not referee the relationship between an attorney and his client any further. I therefore consider the communications in the letter communications from Paz.

2.  **The Language of the Letter**

PRA argues that even if the letter constitutes a communication from Paz, the language of the letter did not effectively dispute the amount of debt. The plaintiff's letter stated that "the amount reported is not accurate." This exact language in similar letters has been sufficient to communicate a dispute in other FDCPA cases in the Northern District of Illinois. *Emerson v. Fid. Capital Holdings, Inc.*, No. 15 C 3416, 2015 WL 5086458, at *2 (N.D. Ill. Aug. 14, 2015) ("[Plaintiff's] statement that 'the amount reported is not accurate' evinces the intention to dispute the validity of at least a portion of the purported debt"); *Rodriguez v. I.Q. Data Int'l, Inc.*, No. 15-CV-383, 2015 WL 7351925, at *1 (N.D. Ill. Nov. 4, 2015) ("It is hard to figure out what it means to complain that a debt is 'inaccurate' without disputing the amount of the debt"); *Gomez v. Portfolio Recovery Associates*, LLC, 15-cv-4499, (N.D. Ill, June 20, 2016) (finding "[i]t was as clear as day based on a plain reading of the Letter from a lay person perspective that [the consumer] was disputing the Debt" when the letter to the defendant stated "the amount reported is not accurate"). PRA tries to distinguish these cases by noting they were decided at a different stage of the litigation. *Emerson* was decided at the pleadings stage, and *Rodriguez* was decided before the parties had completed discovery. Even though I am deciding this issue on summary judgment, the meaning of the operative phrase remains clear. By stating that the amount reported was not accurate, Paz's attorney communicated a dispute on behalf of Paz.

This language communicates a dispute even if the underlying dispute was not valid. *See Hudspeth v. Capital Mgmt. Servs., L.P.*, No. 11-CV-03148-PAB-MEH, 2013 WL 674019, at *7

9

(D. Colo. Feb. 25, 2013) (citing *DeSantis v. Computer Credit, Inc*., 269 F.3d 159, 162 (2d Cir. 2001). Despite PRA's argument that it is entitled to judgment because Paz's counsel "had no grounds" to state that the account balance was inaccurate, the law does not require such grounds to dispute a debt. Furthermore, the FDCPA does not require that a consumer dispute a debt by sending a letter to a particular individual or department within the debt collector's office. PRA argues that the fact the letter was not sent to the disputes department makes the meaning of the letter unclear or ambiguous. But Paz's attorney sent the letter to PRA's general counsel. There is no evidence from which a jury could conclude that sending the letter to the company's legal representative was an attempt to obscure the message or manipulate the debt collector into violating the FDCPA.

## III.     The Materiality of the Dispute

PRA argues that even if its failure to communicate the disputed debt violated § 1692e(8), it is only liable under the FDCPA if the information was material. PRA argues that Paz would have ultimately lost her dispute, so whether or not the credit agencies knew about the dispute is irrelevant for her credit rating and her financial position.

A statement by a debt collector to a consumer only violates § 1692e(8) if it meets the element of "materiality." *Hahn v. Triumph Partnerships LLC*, 557 F.3d 755, 757 (7th Cir. 2009). If a debt collector's false statement does not affect a consumer's ability to "choose intelligently" and the false statement would not "mislead the unsophisticated consumer," then the statement does not constitute a violation of § 1692e(8). *Id*. at 757–58. The Seventh Circuit considers whether a particular statement would actually be misleading according to an "objectively reasonable reading of the communication." *Turner v. J.V.D.B. & Associates, Inc.*, 330 F.3d 991, 995 (7th Cir. 2003).

The Seventh Circuit's case law on materiality is limited to circumstances where the misleading communication was made to consumers, but the materiality requirement extends to all claims under the FDCPA. *See Hahn*, 557 F.3d at 757 (7th Cir. 2009) ("Materiality is an ordinary element of any federal claim based on a false or misleading statement."). To consider materiality in this context, the question is how an objectively reasonable credit reporting agency would respond to a communication that fails to mention that a debt was disputed, even when it was.

The Eighth Circuit has held that the question of whether a debt is disputed is "always material" to a piece of credit information. *Wilhelm v. Credico, Inc.*, 519 F.3d 416, 418 (8th Cir. 2008). A court in this District applied the language from *Wilhelm* in holding that "[w]hether or not a consumer is disputing a debt is no minor matter that could be deemed an immaterial aspect of the debt." *Gomez v. Portfolio Recovery Associates*, LLC, No. 15 C 4499, 2016 WL 3387158, at *4 (N.D. Ill. June 20, 2016). The fact that a consumer disputed the debt is an "extremely pertinent piece of information" that could have "far reaching consequences" for a consumer. *Id.*

This Court follows the reasoning from the Eighth Circuit and the court in *Gomez* in holding that whether or not a debt is disputed is a material piece of information when reporting information to a credit agency. The FDCPA does not permit debt collectors to withhold the disputed nature of debts, even in instances when the debt collector considers that dispute invalid. Even if Paz would ultimately lose her dispute, the credit rating agency would want to know that such a dispute exists so it could determine on its own how to consider Paz's creditworthiness. The FDCPA protects consumers against incomplete communications to credit reporting agencies, regardless of whether the underlying dispute was valid or whether the consumer was even aware that such an incomplete communication took place. Thus the violation of § 1692e(8)

that occurred when PRA did not make the required disclosures was a material violation.

## IV. The Bona Fide Error Defense

PRA's final argument against liability is that the FDCPA's bona fide error defense applies in this instance. A debt collector otherwise liable under the statute can claim a bona fide error defense under § 1692k(c) of the FDCPA:

> A debt collector may not be held liable in any action brought under this subchapter if the debt collector shows by a preponderance of evidence that the violation was not intentional and resulted from a bona fide error notwithstanding the maintenance of procedures reasonably adapted to avoid any such error.

15 U.S.C § 1692k(c)

To claim this defense, PRA must show that (1) the FDCPA violation was not intentional; (2) the FDCPA violation resulted from a bona fide error; and (3) the defendant maintained procedures reasonably adapted to avoid any such error. *Kort v. Diversified Collection Servs., Inc.*, 394 F.3d 530, 537 (7th Cir. 2005). The threshold issue when considering this defense is whether PRA's determination that the letter did not effectively dispute the debt was an error of fact or an error of law. The Supreme Court has held that the bona fide error defense does not apply in the latter circumstance, where "a violation of the FDCPA result[s] from a debt collector's incorrect interpretation of the requirements of that statute." *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 604–05 (2010).

It is undisputed that PRA received the attorney letter and read the portion of the letter that stated "the amount reported is not accurate." Had PRA lost the letter before opening it or never even read the relevant phrase, PRA might have made the sort of "genuine mistake" that the FDCPA permits. *See Kort*, 394 F.3d at 538. But this is a case where PRA received and read the letter, made the determination that the letter did not constitute a dispute, and communicated to

third parties without mentioning any dispute. This was not a genuine mistake but a misinterpretation of the FDCPA. Section 1692k(c) provides no protection for a debt collector who misinterprets his legal requirements under the FDCPA. Thus the bona fide error defense does not apply in the present case.

## CONCLUSION

The undisputed facts show that Lusvina Paz communicated her dispute to PRA via clear language in her letter, and PRA failed to include this piece of information in its communications with third parties, as is required by FDCPA § 1692(e)(8). For these reasons, I am granting Plaintiff's Motion for Summary Judgment and denying Defendant's Motion for Summary Judgment.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: November 21, 2016